# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| PLUS EV HOLDINGS, INC., | ) |
|                 Plaintiff, | ) |
| v. | ) No. 20-00197-CV-W-BP |
| THRAS.IO, INC. *et al.*, | ) |
|                 Defendants. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' Motion to Dismiss, (Doc. 65), which seeks to dismiss (1) Count II and (2) Plaintiff's request for statutory damages under Count III. The Court has considered the parties' arguments, and now grants Defendant's motion in part and dismisses Plaintiff's request for statutory damages under Count III.

## I. BACKGROUND

According to the Third Amended Complaint, ("the TAC"), Plaintiff sells a line of bladder-control and pelvic care products; it sells these products on its own website and on Amazon. (Doc. 63, ¶¶ 10-11.) In 2016 Plaintiff created pictures of its products and text promoting the products to be placed on its and Amazon's websites. (Doc. 63, ¶ 12.) It obtained copyrights for at least one of it pictures and advertising text in March 2020, (Doc. 63, ¶¶ 13, 17), but as stated it created and began using these materials in 2016.

One of Plaintiff's competitors – and perhaps its primary competitor on Amazon – sold its products under the brand name "Joy ON." Plaintiff "first noticed Joy ON as a competitor sometime in 2017," (Doc. 63, ¶ 48), and "Defendants purchased the Joy ON business on or about August 9, 2019." (Doc. 63, ¶ 71.) The TAC further alleges that "representatives of Joy ON remained as

consultants and employees of Defendants after the sale, managing the Joy ON business [and] retain[ing] substantial ownership in the profits of Joy ON" after the product line was sold to Defendants. (Doc. 63, ¶ 71.)

In February or March of 2020, Defendants sent a notice, (hereafter, "the Amazon Complaint"), to Amazon accusing Plaintiff of (1) infringing on Defendants' copyrighted advertising materials and (2) falsely and fraudulently claiming copyrights in those advertising materials. (Doc. 63, ¶¶ 26-27, 32.) This caused Amazon to "remove and disable" Plaintiff's listing, which in turn caused Plaintiff to lose sales. (Doc. 63, ¶¶ 28, 31.) Plaintiff eventually learned that Defendants made the Amazon Complaint. (Doc. 63, ¶¶ 35-36; 81.) Plaintiff then contacted Defendants and advised them that not only were the Amazon Complaint's allegations erroneous, but Defendants' advertising infringed on Plaintiff's copyright. (Doc. 63, ¶¶ 38.) Defendants withdrew the Amazon Complaint and Plaintiff's listing on Amazon was eventually reinstated, but Defendants continued to use advertising that allegedly infringed on Plaintiff's copyright. (Doc. 63, ¶¶ 39, 42-43.)

Plaintiff's listings on Amazon were "attacked" in another way in addition to the Amazon Complaint. At various times beginning in December 2018, Plaintiff's products were reported as "Adult" products. "'Adult' products on Amazon consist of sex toys and products tagged as 'Adult' [and] generally do not appear in search results" but Plaintiff's products do not qualify for that label. (Doc. 63, ¶ 55.) However, a complaint – from a customer or competitor – can cause the label to be attached inappropriately. (Doc. 63, ¶¶ 54-55.) Plaintiff refers to the complaints resulting in attachment of the Adult label to its products as "Adult Attacks," and alleges that it was subjected to eighteen Adult Attacks between December 13, 2018 and August 26, 2020. (*E.g.*, Doc. 63, ¶ 82.) Near the time of each such attack, Plaintiff's Instagram account received a "Like" or a

comment from "Joy ON." (*E.g.*, Doc. 63, ¶ 56, 66-67, 72, 76, 78, 82.) Several of the Adult Attacks occurred close in time to product launches or significant industry events that would have otherwise been expected to boost Plaintiff's sales. (*E.g.*, Doc. 63, ¶¶ 60-64, 73-75.) And, Defendant's sales increased at Plaintiff's expense on each such occasion. (*E.g.*, Doc. 63, ¶¶ 64-68.)

The TAC asserts three claims:

Count I – Violation of the Digital Millennium Copyright Act, ("the DMCA")

Count II – Tortious Interference with Contract or Business Expectancy

Count III – Copyright Infringement

These counts were previously asserted in the Second Amended Complaint. Defendants filed a Motion to Dismiss, which the Court granted as to Count II and denied as to Counts I and III. (Doc. 53.)[1] The TAC reasserts Count II and includes new factual allegations in an attempt to state a claim for tortious interference. In addition, the Prayer for Relief for Count III includes a request for "actual and/or statutory damages." (Doc. 63, p. 32.)[2]

Defendants contend that Count II still fails to state a claim for which relief can be granted. They also contend that Plaintiff is not entitled to statutory damages under the Copyright Act. Plaintiff argues that the TAC adequately alleges facts to support its claim of tortious interference and further assert that they do not seek an award of statutory damages. The Court resolves the parties' arguments below.

## II. DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston*

---

[1] The Second Amended Complaint included a fourth count asserting a claim for unfair competition. The Court dismissed that claim, and it is not reasserted in the TAC.

[2] All page numbers are those generated by the Court's CM/ECF system.

3

*School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, materials necessarily embraced by the Complaint, and matters that are amenable to judicial notice. *E.g., Stahl v. United States Dep't of Agriculture,* 327 F.3d 697, 700 (8th Cir. 2003); *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

**A. Count II's Claim for Tortious Interference With Contract or Business Expectancy**

"Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. 2017) (en

4

banc) (quotation omitted). Defendants do not argue that the Adult Attacks described in the TAC do not support a claim of tortious interference; instead, Defendants argue that the TAC does not allege facts that plausibly suggest they are responsible for the Adult Attacks. Plaintiff disputes this contention, and the Court agrees with Plaintiff.

There is no single or direct allegation indicating that Defendants' agents are responsible for the Adult Attacks. Instead, it is the combined effect of the TAC's allegations that make it plausible that Defendants' agents are responsible for the Adult Attacks. The Court refers specifically to (1) the repetition of the Adult Attacks, (2) the Adult Attacks' benefit to Defendants (thereby explaining their repetition), (3) the timing of the Adult Attacks in relation to contacts directed to Plaintiff from Joy ON's Instagram account, (4) the timing of the Adult Attacks in relation to significant product launches and industry events (thereby suggesting the Adult Attacks were conducted by someone involved in the industry), and (5) the fact that some Joy ON employees continued working for Defendants (which explains why the Adult Attacks continued after Defendants purchased Joy ON and the use of Joy ON's Instagram account). This is not definitive proof; however, it is more than simple suspicion (contrary to Defendants' characterization (*see* Doc. 66, pp. 6-7)), and the Court concludes this combination of facts is sufficient to plausibly support Plaintiff's claim that Defendants' agents are responsible for the Adult Attacks.

Defendants also invite the Court to examine Instagram posts that it alleges are the Instagram posts described in the TAC. The Court agrees that Rule 12(b)(6) permits the Court to examine and consider the posts described in the TAC even though they are not attached to the TAC. Defendants allege that "the TAC is misleading in who was actually involved" because there is no "Joy ON corporate Instagram account," (Doc. 66, p. 4), and in Exhibit 1 to their Suggestions

5

in Support Defendants have provided Instagram posts that they allege are the posts referred to in the TAC.  (Doc. 66-1.)  The posts are from an account for a user named "Nacho Nachelis," which Defendants describe as the account for Ignacio Navarro, one of Joy ON's former owners.  (Doc. 66, pp. 3-4.)  But nothing that the Court can rely on under Rule 12(b)(6) establishes that (1) these are the posts Plaintiff relies on, (2) "Nacho Nachelis" is really Ignacio Navarro, or (3) Navarro is a former owner of Joy ON.  Moreover, even if all of these facts could be considered, the TAC alleges that Joy ON's former employees and representatives work for Defendants and continue to have a financial interest in Joy ON's business.  Ultimately, Defendants' Exhibit 1 does not establish that Plaintiff has failed to state a claim.

The TAC may not allege facts establishing a conclusive case against Defendant – but this is not the standard under Rule 12(b)(6).  The TAC states a plausible claim and not mere suspicion, so Plaintiff is entitled to conduct discovery to determine if the claim can be proved.  Whether there is sufficient evidence to establish Defendants' responsibility for the Adult Attacks can best be ascertained after the Record is developed.

### B.  Count III's Request For Statutory Damages

Under the Copyright Act, a party whose copyright is infringed generally can recover actual damages or statutory damages.  *See* 17 U.S.C. § 504(a).  The prevailing plaintiff can also recover attorney fees.  *Id.* § 505.  However, statutory damages and attorney fees are not available under these two provisions if the alleged infringement "commenced after first publication of the [protected] work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  *Id*. § 412.

Relying on § 412, Defendants contend that Plaintiff cannot recover statutory damages because the TAC alleges (1) it created the images in question in 2016 and (2) did not register the
6

copyright until 2019 or 2020.  Plaintiff does not dispute this analysis and instead contends that it is not seeking an award of statutory damages.  (Doc. 67, pp. 7, 18.)  Therefore, the Court grants Defendants' request to dismiss Plaintiff's request for such relief.[3]

### III.  CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's requests for statutory damages under 17 U.S.C. § 504-05 is dismissed.

IT IS SO ORDERED.

DATE:  November 9, 2020

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] The TAC seeks attorneys' fees pursuant to § 512(f), not § 505.  (Doc. 63, p. 31.)  Defendants do not seek dismissal of this request, and the Court's Order does not address whether fees under § 512(f) are recoverable.